Caroline Fink, Respondent, *v.* Ellen Fink, Appellant, Impleaded with Another.

1. Benefit Associations — Change of Beneficiary Effected Only by Strict Compliance with By-law. A member of a mutual benefit association who has the absolute power to change the beneficiary designated in his certificate of membership by complying with a by-law which is exclusive upon the subject and provides that a new certificate should be issued if a member asks for one, but only upon condition that he pay the sum of twenty-five cents, can appoint another beneficiary only by a strict compliance with such by-law.

2. When Request and Payment of Fee to Collector Insufficient to Change Beneficiary. A letter inclosing the prescribed fee, asking for a new certificate and appointing his mother as the beneficiary in the place of his wife who was designated as such in his certificate of membership, written by a member to and received by a collector of the association who was not authorized to receive payment and who was expressly prohibited by the by-laws from waiving any of the conditions prescribed therein, which letter was not delivered to the association until after the member's death, is not a request to the association for a new certificate nor a payment to it of the fee and a change of beneficiary is not thereby effected.

3. When Letters Requesting Change of Beneficiary and Inclosing Fee Mailed before, but Received after Death of Member, Are Insufficient. Two letters, each requesting such change and inclosing the fee, one written by the member, the other by the collector, to the association, and both deposited in the post office the day before the member's death, but not received by the association until the day after, do not constitute a timely delivery of the request and payment to the

association where there is no provision in the by-laws for sending the fee by mail and there has been no correspondence with the association upon the subject, since when nothing has been done by either party to authorize. or call for a letter from the other, the agent selected to deliver is the agent of the sender, not of the receiver, and the relation is not changed ·by selecting the United States mail as the agency to make the delivery, any more than if an express company or a personal messenger had been chosen for that purpose.

4. WHEN BEQUEST OF DEATH BENEFIT DOES NOT CHANGE BENEFICIARY. A specific bequest of the death benefit to his mother in the will of the member does not effect a change of beneficiary where the by-laws do not so provide and the method prescribed by them is exclusive.

5. WHEN ACTION TO RECOVER AMOUNT OF DEATH BENEFIT BY ONE SOUGHT TO BE DESIGNATED AS BENEFICIARY CANNOT BE MAINTAINED. An action against the association to recover the amount of the death benefit brought by the mother, who by reason of such letters and bequest claimed to have been designated as the beneficiary, cannot be successfully maintained for the reason that although the deceased member intended to change the beneficiary the exercise of his power of appointment was defective and after his death the association had no power to make the change, the rights of the widow having become fixed.

*Fink* v. *D., L. & W. Mutual Aid Society,* 57 App. Div. 507, reversed.

(Argued June 17, 1902; decided June 27, 1902.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 15, 1901, reversing a judgment in favor of defendant entered upon a decision of the court at a Trial Term without a jury and granting a new trial.

The "D., L. & W. Mutual Aid Society" is a mutual benefit association incorporated under the laws of the state of Pennsylvania, but doing business in the state of New York. Its membership is confined to employees of the Delaware, Lackawanna & Western Railroad Company, and "its object is to secure assistance to its members, in case of accident, and to their families and friends in case of death." On the 23rd of September, 1894, Eugene G. Fink, an employee of said railroad company, applied in writing for membership in said association, and in his application designated the plaintiff, his mother, as the beneficiary. On the 21st of October following he was duly admitted to membership and a certificate was

issued to him accordingly, naming his mother as the bene-
ficiary.   He delivered the certificate to her and she retained
it until his death on the 21st of December, 1898.

On the 19th of May, 1898, he was married to the defend-
ant, Ellen Fink, and soon after, upon his application, said
association issued to him another certificate of membership
designating his wife as the beneficiary.   He thereupon
delivered the certificate to her and she has ever since retained
possession thereof.

The by-laws of the association provide that upon the death
of a member the person "named in his declaration shall
receive a sum equal in amount to one dollar from each mem-
ber in good standing at the date of his death, provided that
such amount shall not exceed the sum of $1,000.   *   *   *
Should a member lose his certificate or ask for a new one at
any time, it shall be issued only upon the payment of 25 cents,
said certificate to be marked duplicate or renewal, as the case
may be."

In November, 1898, the member and his wife were living
with the plaintiff.   He was very sick and she took care of him
until she was directed by his parents to leave, whereupon she
returned to the home of her mother.   In a few days she went
back to take care of her husband, but after remaining a short
time, she was requested by the plaintiff to leave, when she
again returned to her mother and after that, although she
asked for the privilege, she was not permitted to stay with him.

On the 8th of December, 1898, Mr. Fink, while ill and
weak, wrote a letter to one Wiltshire, a collector of the
association, "requesting that another certificate of membership
be issued to him, designating the plaintiff as his beneficiary
and inclosing in said letter the sum of 25 cents."   This letter
was delivered to Wiltshire, who wrote to the defendant Ellen
Fink asking her to surrender her certificate, and on December
21st, 1898, he received a letter from her declining to do so.
On the day last named he wrote to the financial secretary of
the association stating that Mr. Fink " desired a new certificate
made out designating the plaintiff as his beneficiary, and

inclosing therein the fee of 25 cents." He never forwarded the letter written by the member on December 8th, 1898, because it was not accompanied by the old certificate, but kept it until April, 1899, when he delivered it to the attorneys for the association.

On December 21st, 1898, Mr. Fink was upon his death bed, and during the morning of that day, upon his father's request, he dictated to his father's lawyer and thus wrote a letter to the secretary of the association, referring to his previous request to Wiltshire, and to the fact that he had received no response, and asking that a new certificate be issued to him, naming the plaintiff as beneficiary. He inclosed 25 cents to pay the fee, and caused the letter, duly signed by him, to be registered and mailed. This letter, as well as the one written by Wiltshire, were both mailed at Buffalo, New York, while Mr. Fink was still living, but neither was received by the officers of the association at Scranton, Penn., until the day after his death. No action was taken by the association upon either request.

On the day of his death, and on the same occasion that he dictated the letter to the association, the member executed a will, drawn by the lawyer who transcribed the dictation, by which he gave all his property to the plaintiff, including by specific mention the death benefit, except that the sum of $100 was bequeathed to any child thereafter born of his marriage.

Both the mother and the widow claimed the amount payable by virtue of the contract, and the association was ready to pay to the one lawfully entitled to receive the money. The plaintiff brought this action to require it to pay her the amount called for by the certificate, and to exclude the defendant Ellen Fink from taking action to obtain any part thereof. It was claimed by the defendant Mrs. Fink that the plaintiff exercised undue influence upon her son while he was sick to induce him to write said letters, and evidence was given by either side upon this issue, but the trial judge made no finding upon the subject. He found as a fact that the request to Wiltshire was not a request to the association and that the

payment of the 25 cents inclosed in the letter to him was not a payment to the association. He also found that the association never consented to the change of beneficiary in favor of the plaintiff and that the second certificate was in full force when Mr. Fink died. The judgment ordered by him in favor of the widow for the sum of $1,000 was reversed upon appeal by the Appellate Division, one of the justices dissenting, and the defendant, Ellen Fink, appealed to this court.

*Daniel V. Murphy* and *William L. Rumsey* for appellant. The designated beneficiary in a certificate of membership of a mutual benefit society can be changed under the law of this state only by and with the consent of the society. (L. 1883, ch. 175, § 18; *Hellenburgh* v. *District No. 1*, 94 N. Y. 580; *Story* v. *Williamsburgh*, 95 N. Y. 474; *Luhrs* v. *Luhrs*, 123 N. Y. 367; *Thomas* v. *Thomas*, 131 N. Y. 205; *Sanger* v. *Rothschild*, 50 Hun, 117; *Armstrong* v. *Warren*, 83 Hun, 217; *Cullen* v. *Knights of Maccabees*, 77 Hun, 6; *Ireland* v. *Ireland*, 42 Hun, 212; *Gladding* v. *Gladding*, 29 N. Y. S. R. 485; *Greeno* v. *Greeno*, 23 Hun, 478.) Wiltshire was an agent with powers expressly conferred and limited by the defendant's constitution and by-laws, and these powers were brought to the notice of Eugene Fink, the insured. (Mechem on Agency, § 273; *Craighead* v. *Peterson*, 72 N. Y. 279; *Walsh* v. *H. Ins. Co.*, 73 N. Y. 5; *Tillman* v. *J. H. M. L. Ins. Co.*, 27 App. Div. 393; Niblack on Ben. Soc. 35; *Mitchell* v. *L. M. Ins. Co.*, 51 Penn. St. 402; *Adrian* v. *Roome*, 52 Barb. 399; *Eaton* v. *Supreme Lodge*, 22 Cent. L. J. 560; *Painter* v. *Association*, 14 Ins. L. J. 556.) The ineffectual attempt to change the beneficiary did not revoke the former designation. (*Elsey* v. *Odd Fellows*, 142 Mass. 224; *Armstrong* v. *Warren*, 83 Hun, 217; *Grace* v. *N. W. M. R. Assn.*, 58 N. W. Rep. 1041; *Renk* v. *Herrmann Lodge*, 2 Dem. 409; *Thomas* v. *Thomas*, 131 N. Y. 205; *McCarthy* v. *N. E. Order of Protection*, 153 Mass. 314; *Coyne* v. *Bowe*, 23 App. Div. 261; *Cullin* v. *Knights*, 77 Hun, 6.)

*Henry Schwendler* for respondent.   The respondent is the person entitled to the benefit because a valid change of beneficiary had been made by the deceased to the respondent after the certificate of August 21, 1898, had been issued to the appellant.   (Niblack on Ben. Soc. § 214; Bacon on Ben. Soc. & Life Ins. § 308a; *M. M. B. Soc.* v. *Burkhart*, 110 Ind. 189; *M. M. B. Soc.* v. *Clark*, 109 Mo. 560; *Moan* v. *Normille*, 37 App. Div. 614; *Luhrs* v. *Luhrs*, 123 N. Y. 367; *Cullin* v. *Knights*, 77 Hun, 6; *Collins* v. *Collins*, 30 App. Div. 341; *S. L. Home* v. *Assn.*, 52 N. Y. 191; *Hotchkiss* v. *Mosher*, 48 N. Y. 478; *Hirschl* v. *Clark*, 81 Iowa, 200; *M. M. B. Assn.* v. *Bunch*, 109 Mo. 560.)   If article 21 of the by-laws was intended and does regulate the change in beneficiary and notice of some kind must be received by the association during the lifetime of the member, the deceased had complied with that requirement.   (Mechem on Agency, §§ 83, 84; *Powers* v. *P. Ins. Co.*, 83 Hun, 254; *Mun* v. *Com. Co.*, 15 Johns. 44; *Com. Bank* v. *Norton*, 1 Hill, 101; *Bank* v. *Putnam*, 3 Keyes, 343; *Wood* v. *A. R. R. Co.*, 8 N. Y. 160; *Coyne* v. *Bowe*, 23 App. Div. 261; 161 N.Y. 633; Bacon on Ben. Soc. & Life Ins. [2d ed.] 643; *Hannigan* v. *Ingraham*, 28 N. Y. S. R. 530; *Luhrs* v. *Luhrs*, 123 N. Y. 367; *Scholl* v. *Sudowi*, 41 Penn. L. J. 43; *Grand Lodge* v. *Child*, 70 Mich. 163.)

VANN, J..  Eugene Fink, as a member of the association, had the power to change the beneficiary named in the certificate, provided, in executing the power, he complied with the contract which created it.   That contract consisted of the application, the certificate showing how the power of appointment had been exercised, and the by-laws which, among other things, regulated the method of appointing a new beneficiary. They provided that a new certificate should be issued if the member asked for one, but only upon the condition that he paid the sum of twenty-five cents to the association.   It was the duty of the recording secretary " to fill out and prepare certificates of membership " and of himself and the president

to sign them. The request of Mr. Fink for a new certificate did not reach the association until after his death, and he never paid it the fee required by the by-laws. The payment to Wiltshire, the collector, was not a payment to the association, because he had no authority to receive it, as its agent. His duties were " to receive and collect dues and assessments from members, giving his receipt therefor upon blanks furnished by the association." The dues and assessments referred to are monthly dues required from each member and certain assessments made quarterly, as well as those made upon the death of members. The by-laws, of which the member had notice for they were a part of the contract, did not authorize the collector to receive the fee required before a new certificate could be issued, and they expressly prohibited him from waiving any condition by them prescribed. In receiving the fee and transmitting it to the association, he did not act as its agent but as the agent of the member.

The change of the beneficiary is an important matter, for it transfers the right to receive the death benefit, amounting in this case to $1,000, from one person to another. The right of the member to make the change is absolute and the beneficiary can neither prevent it by objecting, nor promote it by consenting. Obviously such a transaction requires some formalities for the protection of the company, the member and the beneficiary. The formalities required by the association before us, through its by-laws, were very simple, but unless they were substantially complied with, the change could not be made. Mere intention to make a change is not enough, for the acts prescribed to carry the intention into effect are forms imposed upon the execution of a power, and they must be observed or the change cannot be effected. As a condition precedent to effectuate the change, the member was required to ask the association for a new certificate and to pay it the fee exacted by the by-laws. The association could not make the change unless he requested it and even then, as it stipulated in its contract with him, " only on the payment of twenty-five cents." While it could have waived payment.

during his life, it did not do so and it could waive nothing after his death, for by that event the rights of the beneficiary became fixed and unalterable.

As no provision was made in the by-laws for sending the fee by mail, and there had been no correspondence with the company upon the subject, transmission by that means could affect nothing until the letter actually reached the officers of the association and then it was too late. (*Peabody* v. *Satterlee*, 166 N. Y. 174.) When nothing has been done by either party to authorize or call for a letter from the other, the agent selected to deliver is the agent of the sender, not of the receiver. The relation is not changed by selecting the United States mail as the agency to make the delivery, any more than if an express company or a personal messenger had been chosen for that purpose. (*Crown Point Iron Co.* v. *Ætna Ins. Co.*, 127 N. Y. 608, 618.)

The mailing of the letter, therefore, was not a delivery to the association, for the post office department became the agent of the one who sent the letter, not of the one who finally received it. When the member died, he had not asked for a new certificate, nor had he paid the fee therefor, within the true meaning of the by-laws. While he intended and tried to make both the request and the payment, the agency selected by him for the purpose failed to deliver either until after his death. This failure was his failure and the change intended was not made. When he died the title of his wife became absolute, and the subsequent receipt by the association of both money and request did not change her rights, for it had then become her debtor for the amount payable by virtue of the contract.

The question before us is a question of title, for the certificate issued in favor of the wife was valid and binding upon all concerned until a change of beneficiary was lawfully made. The contract creating the power to appoint another beneficiary protects the existing beneficiary until the forms imposed upon the execution of the power have been substantially complied with. When the member died he had not executed the

power, for the association had no knowledge of his intention or attempt to make the change and was, therefore, under no liability to the plaintiff, because her title was not perfected in accordance with the contract. The intention of the member was no clearer than it was in *Thomas* v. *Thomas* (131 N. Y. 205), where we held there was no valid change in the beneficiary because the member had failed to conform to the by-laws. The hardship in that case was quite equal to the hardship in this, but we held that there was a defective execution of a power and that the intention and attempt to change the beneficiary were ineffectual on that account.

In *Luhrs* v. *Luhrs* (123 N. Y. 367), relied upon by the Appellate Division in giving judgment, the constitution of the association provided that a member desiring to change his beneficiary might do so by surrendering to his local lodge the benefit certificate, and it was the duty of the local lodge to forward the same to the supreme lodge, which was thereupon required to cancel the original certificate and issue a new one in lieu thereof payable as the member directed. The member surrendered his old certificate to the local lodge with a direction written thereon to issue a new one for the benefit of another beneficiary. The local lodge mailed it to the supreme lodge the next day, and after it was mailed, but before it reached its destination, the member died. Under these circumstances we held, with some hesitation, that the surrender of the certificate to the local lodge was in law the surrender thereof to the supreme lodge, which had no discretion in the premises, and that, as the member had done all that was required on his part to effect the change, the issuance of another certificate after his death might " be held to relate back to the time of the original surrender to the agent of the supreme lodge." We further declared that " no new rights were brought into being by the action of the supreme lodge after the death of the member, but that action simply gave the proper written evidence to the beneficiary of the existence of those rights which had, in fact, accrued before the formal issuing of such written evidence."

In that case everything had been done that the member could do, while in this he had really done nothing, as his attempt to reach the company was a failure. If he had started in full health to deliver the letter in person and had met with a fatal accident on the way, the failure would have been no more complete.

The member could not change the beneficiary by will, because the by-laws did not, so provide, and the method prescribed by them was exclusive. Nor could he thus dispose of the right to receive the death benefit, because he had no property interest therein, but only a power of appointment. (*Hellenberg* v. *District No. One I. O. of B. B.*, 94 N. Y. 580, 585.) In deciding that case we said: " The testator could have any time gone to his lodge and designated upon the books some other recipient, thus revoking his previous designation. The mother could not become entitled to the endowment at all unless she survived the testator, and her designation remained unrevoked. Nor did the testator have any interest in the future fund. He had simply a power of appointment, authority to designate the ultimate beneficiary, and that power and authority died with him, because it could only be exercised by him, and prior to his decease. If he did not so exercise it nobody surviving or representing him could, and upon his death he could have nothing which would descend, or upon which a will could operate."

We think that the judgment rendered by the Special Term was right, and that the order of the Appellate Division should be reversed and the judgment of the Special Term affirmed, with costs to the defendant, Ellen Fink, against the plaintiff.

PARKER, Ch. J., GRAY, O'BRIEN, BARTLETT, MARTIN and CULLEN, JJ., concur.

Order reversed, etc.