# JANUARY TERM, 1911.*

---

### ANCIENT ORDER OF GLEANERS *v.* BURY.

INSURANCE — CHANGE OF BENEFICIARY — MUTUAL ASSOCIATIONS — FRATERNAL BENEFICIARY SOCIETIES.

Under by-laws of a beneficiary insurance association, providing for the payment of a fee of 25 cents and the approval of the supreme secretary as precedent to a change of beneficiary, the insured did not effect a valid change by directing the local secretary in writing to make a change of beneficiary without paying the fee, when the directions were not mailed to the supreme secretary until the following day, and the insured died during the interval.

Appeal from Wayne; Rohnert, J. Submitted January 17, 1911. (Docket No. 100.) Decided March 13, 1911.

Bill of interpleader by the Ancient Order of Gleaners against Byron C. Bury, Caroline Bury, Willard Leroy Bury, and Clellan B. Bury, to determine defendants' interests in an insurance policy. From a judgment for Byron C. Bury, codefendants, Caroline Bury and others, appeal. Affirmed.

*Harris S. Whitney*, for appellant Caroline Bury and others.

*Gore & Harvey*, for appellee Byron C. Bury.

MOORE, J. The questions involved in this case are so fully stated in the opinion filed by the circuit judge that we quote freely therefrom:

"In this case deceased held a benefit certificate in com-

---

* Continued from Vol. 164.

plainant order.   The beneficiary named therein was a son, Byron Bury.   The deceased on January 11, 1909, summoned the secretary of the local order of the complainant to his bedside for the purpose of designating a change of beneficiaries in the certificate.   He was at that time sick in bed and in a very bad condition.   He then executed a direction to change the beneficiary, turned it over to the local secretary, and died at 5 :30 o'clock on the morning of the 12th of January.   The direction for the change of beneficiary was mailed by the local secretary to the supreme secretary in the middle of the forenoon of January 12th, after the deceased had died.   The direction for the change of beneficiary is in words and figures following :

" ' The $1,000.00 insurance of Clellen B. Bury's in the Ancient Order of Gleaners, that is now payable to Byron C. Bury, is to be changed, and to be payable to the wife and children of C. B. Bury. $250.00 to his wife, Caroline Bury.   $250.00 to his son, Byron Bury.   $250.00 to his son Willard Bury.   $250.00 to an unborn child.'

"A bill of interpleader was filed by the complainant, in that Byron Bury claimed the entire amount of the benefit, and the persons named in the above writing claimed participation in the benefit, as therein indicated.   A decree of interpleader was entered.   Issue was framed between the defendants, testimony taken, disclosing the above facts, and also disclosing the fact that Clellan B. Bury had not paid the transfer fee of 25 cents as required by the by-laws of the order.   Undoubtedly under certain circumstances a member of the order may change the beneficiaries in his certificate in a manner other than prescribed by the by-laws of the order.   First, if the certificate is out of his control, and therefore cannot be surrendered, he may make a testamentary disposition, or may indicate the transfer without a surrender of the certificate.   So, also, where a fraud has been committed upon a member, may he express an intention which will be given force and effect in equity.   So, also, where he has done each and everything that the by-laws of the order require that he shall do to effect a transfer, will the court give effect to his expressed intention, if by reason of untimely death the transfer shall not have been actually made in his lifetime. In this case, the facts show that the member did everything except the payment of the fee when death cut him

off; death intervening even before the local secretary could transmit the written designation to the grand secretary by which the transfer was to be made.   The payment of the transfer fee is a condition precedent under the by-laws before a member could compel the new certificate to be issued.   A court of equity will give effect in cases arising from an attempt to change beneficiary to the expressed intent of the deceased, where such expression exists in his having done everything that the by-laws require him to do.   * * *   The question to be considered by the court is:   Has deceased done everything that the by-laws required him to do before he is entitled as a matter of right under the by-laws to the issuance of a new certificate, and a new designation of beneficiaries?   Admittedly he has not, in that he has not paid the necessary transfer fee. While the payment of this transfer fee may be waived by the order, of which he is a member, by the issuance of a new certificate, it is not claimed in this case that there is any such waiver, in that no new certificate had been issued.   The purpose of the by-law is to afford protection to the order in the payment of the benefit to avoid complications and litigation, and it is as binding upon the member as it is upon the order itself.   While the by-law in this case apparently permits a discretion on the part of the grand secretary, it cannot be claimed that the grand secretary can exercise this discretion to the prejudice of a member.   If a member has failed to comply with the by-laws, could he compel the grand secretary to issue a new certificate?   In this case if the member had lived and had done no more than he did do, he was not in a position to compel the issuance of a new certificate.   Not being in a position to compel an issuance of a certificate, can he be said to have fully expressed the intention in manner as required by the by-laws?   I think it cannot be said that he has.   In order to compel the issuance, he would have to do something more than he did do.   * * *   To extend the rule to give effect to his apparent intention would result in limitless litigation, and the very thing sought to be avoided by the by-law.   In a word, the by-law provides how he may fully express his intention.   If he has done everything that the by-law requires to express the intention, a court of equity will carry it out, but it cannot interfere unless his intention has been fully expressed. That has not been done in this case.   The fund is awarded to the first beneficiary."

The claim of the appealing defendants is indicated by the following from the brief of counsel:

"The existence of the right to share in the benefits of the order and to direct who should receive the fund in case of the death of a member was a right vested in the member as soon as he became entitled thereto.   *   *   * Mr. Child did all he could in making the change, and it should have been allowed and done by the order. Equity will consider that done which ought to have been done. *Grand Lodge A. O. U. W.* v. *Child*, 70 Mich. 172 (38 N. W. 5)."

"When the insured has done all within his power to effectuate substitution, equity may grant relief in proper cases. *Supreme Conclave, Royal Adelphia* v. *Cappella* (C. C.), 41 Fed. 1."

"The change will, so far as possible, give effect to the intentions of the parties, and will consider an attempted change of beneficiaries complete without undue regard for technicalities. *Luhrs* v. *Luhrs*, 123 N. Y. 367 (25 N. E. 388, 9 L. R. A. 534, 20 Am. St. Rep. 754)."

"The change of appointment may be sustained without the issuance of a new certificate of insurance. *Bishop* v. *Grand Lodge E. O. of M. A.*, 112 N. Y. 627 (20 N. E. 562). Richards on Insurance, note 1, p. 80."

Many other authorities are cited along the same line, but these cases do not meet the situation here. Would it be claimed that, though decedent fully orally expressed his intention to change his beneficiary, because he was prevented by his death from putting his intention in writing, while some one was attempting to procure pen, ink, and paper, this would be a sufficient expression of his intention to work a change of beneficiaries? The certificate of insurance provides that the provisions of the constitution of the complainant are part of it. Article 21 reads:

"SEC. 2. No certificate can be transferred by a member to any person other than provided in article 1 (c), and no transfer of a certificate will be binding on the order unless consent thereto is given by the supreme secretary. In case a member desires to change the beneficiary named in his or her certificate, he or she shall make a written re-

quest therefor and deliver same, with the certificate fee of twenty-five cents, to the secretary of his or her arbor, who will forward the same to the supreme secretary, who will thereupon, if found to be made payable as hereinbefore provided, issue a new certificate bearing the same number as the one surrendered."

The record discloses that the consent of the supreme secretary was never given to the transfer, nor was the certificate fee of 25 cents delivered to the secretary of the local arbor, and no reason appears in the record why it was not done, nor was any certificate fee of 25 cents forwarded to the supreme secretary. The following has been stated as the law:

" When a mutual benefit society has, under the powers and within the limits of its charter, provided in its by-laws a particular method of changing a beneficiary, or has set forth in its certificate a way by which the change may be made, no change of beneficiary may be made in any other mode or manner. The reason for this rule is not difficult to discover. It is based upon the familiar maxim that the expression of one thing excludes other and different things. When a society frames a set of rules providing for the distribution of a fund, and for the rights of beneficiaries and members, it must be assumed that it excludes every other mode and manner. Any other conclusion would lead to the most interminable confusion in the law applicable to the distribution of insurance money, and fritter away, in the expenses of uncertain litigation, funds created for the benefit of widows, orphans, and heirs. But there is still another reason. It cannot be said that a beneficiary named in a certificate has no rights therein because he has no vested rights. The beneficiary has a right to the proceeds of the certificate of insurance, subject to the right of the member to change the beneficiary according to the terms of the by-laws and regulations of the society, which are a part of the contract of insurance; and the right of the beneficiary to have this contract carried out in the manner provided for is as binding upon the member as his right to change the beneficiary is binding upon the beneficiary and the society." Niblack on Insurance, pp. 415, 416.

The case of *Fink* v. *Fink*, 171 N. Y. 616 (64 N. E.

506), would seem to be quite in point. We quote from the opinion:

" The change of the beneficiary is an important matter, for it transfers the right to receive the death benefit, amounting in this case to $1,000, from one person to another. The right of the member to make the change is absolute and the beneficiary can neither prevent it by objecting, nor promote it by consenting. Obviously such a transaction requires some formalities for the protection of the company, the member, and the beneficiary. The formalities required by the association before us, through its by-laws, were very simple, but unless they were substantially complied with, the change could not be made. Mere intention to make a change is not enough, for the acts prescribed to carry the intention into effect are forms imposed upon the execution of a power, and they must be observed or the change cannot be effected. As a condition precedent to effectuate the change, the member was required to ask the association for a new certificate and to pay it the fee exacted by the by-laws. The association could not make the change unless he requested it, and even then, as it stipulated in its contract with him, ' only on the payment of twenty-five cents.' While it could have waived payment during his life, it did not do so and it could waive nothing after his death, for by that event the rights of the beneficiary became fixed and unalterable."

It is unfortunate that Mr. Bury did not enter upon his undertaking earlier, but we cannot make a different contract for him and the complainant than the one which they made for themselves.

The decree is affirmed, with costs.

OSTRANDER, C. J., and BIRD, HOOKER, and MCALVAY, JJ., concurred.